*Law Offices of*
*Susan G. Kellman*
*25 Eighth Avenue*
*Brooklyn, New York 11217*

Telephone: (718) 782-8200  
Telefax: (718) 783-8226

*Fellow American College*
*Of Trial Lawyers*

e-mail: kellmansg@aol.com

February 29, 2012

**By ECF and REGULAR MAIL**
Hon. Brian M. Cogan
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *United States v Joel Cacace*
                Criminal Docket No. 08-240 (S-7) (BMC)

                *United States v. Thomas Gioeli, et. al.*
                Criminal Docket No. 08-240 (S-6) (BMC)

Dear Judge Cogan:

      This letter is written on behalf of Joel Cacace, in connection with the Court's recent order granting the government's motion in limine for *ex parte, in camera* review of the PSRs of certain cooperating witnesses (February 10, 2012), and -- after conducting the requested review -- determining that the PSRs will not be made available to defendants Gioeli and Saracino (February 15, 2012). According to the Court, it followed the procedure set forth in *United States v. Charmer Indus., Inc.*, 711 F2d 1164 (2d 1983) and *United States v. Moore*, 949 F.2d 68 (2d Cir. 1991), and found "[b]ased on the lack of exculpatory evidence in these reports, and the Government's representation that it either has turned over, or will turn over, all impeachment material pursuant to its obligations under *Giglio v. United States*, 405 U.S. 150, 92 S. Ct. 763 (1972)," "that the defendants do not have a compelling need for these reports."

      Neither Gioeli nor Saracino submitted a challenge to the Government's request for judicial review before the Court issued its order declining disclosure of the PSRs. In anticipation that the Government will be relying on some of the same cooperating witnesses at Mr. Cacace's trial (and to insure that the Court not assume the issue of disclosure predetermined), he seeks reconsideration. Counsel for Gioeli and Saracino also join in this motion.

      Specifically, we submit that rote application of the "compelling need" test articulated in *Charmer Industries* –and the apparent application of a *de facto* presumption against disclosure --

is inappropriate in the circumstances of this case. To the extent the reports (in the Government's possession) contain exculpatory or *Giglio* material, the Government is obliged under the due process clause of the Constitution to turn over any such material regardless of the defendant's ability to demonstrate pre-trial that he has a "compelling need" for particular information. See *United States v. Bagley*, 473 U.S. 667, 675-6, 681-2 (1985); *United States v. Strifler*, 851 F.2d 1197, 1201-02 (9th Cir. 1988); *United States v. Alvarez,* 358 F.3d 1194, 1208 (9th Cir. 2004); *United States v. Figurski*, (4th Cir. 1976).

In addition, while the PSRs in their entirety may not be a "statements" of the cooperators, *portions* of the PSRs may constitute statements of the government's witnesses; the disclosure of any such statements is not exempt from the requirements of 18 U.S.C. § 3500 nor precluded by any countervailing interest in protecting the witnesses' confidences (see *United States v. Beckford*, 962 F. Supp. 780, 797 (E.D. Va. 1997)); *United States v. Jordan,* 2007 U.S. Dixt. LEXIS 45984 (E.D. Tenn. 2007)). Moreover, unless they are exempt from discovery by Rule 16(a)(2) because they are "statements made by prospective government witnesses" and thus discoverable as provided in 18 U.S.C. § 3500, any portions of the PSRs that are "material to preparing the defense" (and, in Mr. Cacace's case this means the defense to both the guilt and any potential penalty phase) are discoverable as documents within the government's possession pursuant to Rule 16(1)(E)(i).

*Charmer'*s holding – "that the court should not release a presentence report to a third person unless that person has shown a compelling need for disclosure to meet the ends of justice," 711 F.2d at 1176 – reflects a balancing of interests: the interest of sentencing courts in arriving at intelligent sentencing decisions through the receipt of a free flow of information (which is promoted when the confidentiality of those providing information is protected) against the needs of third parties for the disclosure of the information in the report.

It is important not to lose sight of the facts of *Charmer* (as well as the Rules of Criminal Procedure that existed at the time of that decision) because they provide the context for the holding in that case and the announced standard of "compelling need" that seemingly favors non-disclosure. The facts and circumstances in this case, as well as the current rules regarding presentence reports, dictate a different result.

*Charmer* did not involve the presentence reports of individuals who had signed cooperation agreements with the government and who – despite strong motives to curry favor with the government -- had promised to be truthful, to be fully debriefed and to testify (and thus subject themselves to cross-examination). *Charmer* also did not involve the PSRs of individuals whose debriefings were relied upon by the prosecutors to indict others, whose testimony would be relied upon by the government in an effort to convict those others, and whose sentencing benefits ultimately depended on the perceived truthfulness of that testimony.

Significantly, *Charmer* involved an effort by the Arizona Attorney General to obtain a PSR that had been prepared in connection with the sentencing of a corporation ("Peerless") for antitrust violations in the EDNY in order to use the information contained in the report in a proceeding to revoke liquor licenses of a Peerless subsidiary in Arizona. Of particular interest to the Arizona Attorney General was certain double hearsay information in the PSR from

unidentified law enforcement authorities and informants relating to a particular Peerless officer. (The Arizona Attorney General had originally obtained the PSR without court approval because Probation had turned it over; Peerless then sought to enjoin its use.)

Peerless had pled *nolo contendere* to the antitrust action in the EDNY, no individuals were charged as defendants in the action, and the only punishment to be imposed on Peerless was a fine. Because the only issue at sentence was the size of the fine, Peerless had no obvious interest in disputing the hearsay regarding the officer. In these circumstances, the Second Circuit reasoned that it would it be inappropriate to presume the accuracy of the report in "an unrelated context" – and use it against Peerless -- based on Peerless's failure to challenge the hearsay during the sentencing proceedings. Moreover, again expressing concern with the Arizona AG's affirmative use of the report against Peerless, the Court decreed that introducing the PSR in the Arizona proceedings (something that Arizona law permitted) and thereby subjecting Peerless to triple hearsay which was "susceptible neither to cross-examination nor, with no information supplied as to the reliability of the informant, to evaluation" "does not comport with our normal notions of rudimentary fairness, and facilitation of such use hardly seems to promote the ends of justice." 711 F.2d at 1176, 1178.

A showing of "compelling need" before turning a PSR over to a third party was thus deemed appropriate in *Charmer* not only in order to (a) protect promises of confidentiality and promote the free flow of information to the sentencing court; but also, and importantly, (b) to protect both the defendant-subject of the PSR from untested allegations and the integrity of an unrelated civil proceeding in another state by preventing the use at that proceeding of potentially unreliable information contained in the PSR (that the defendant may have had no interest in challenging in connection with the sentencing). Notably, in finding "no compelling need" in that case, the Court also explained that "A central element in the showing required of a third person seeking disclosure is the degree to which the information in the presentence report cannot be obtained from other sources," and pointed to the ease with which the Arizona AG could ascertain all the information it needed about Peerless either directly from the Government and/or the Government's public plea memorandum or from Peerless itself.

Here, by contrast, the PSRs undoubtedly contain substantial relevant information about both the charged offense and the individual cooperators that was provided (not by persons promised confidentiality or by persons whose reliability the cooperators had no interest in challenging,) but, rather by the prosecutors and the cooperators themselves – individuals who, in order to obtain the benefits of their cooperation, separately promised to be truthful and agreed to be fully debriefed and to testify where they would be subjected to cross-examination. The cooperators' obligation and agreement to be candid with the Government and with Probation did not flow from, and was not dependent upon, any expectation they may have had that their presentence reports would not be disclosed. The proceeding at issue, moreover, is not an unrelated civil proceeding in another state where hearsay will be used against the cooperators, but, rather, a criminal death penalty case at which the cooperators will be the ones testifying against Mr. Cacace.

To the extent the reports also contain information from confidential sources, the identity of these sources is already protected from disclosure under the current version of Fed. R. Cr. P.

32(d)(3)(B)(1): the Rule now provides, "The presentence report must exclude…any sources of information obtained upon a promise of confidentiality." Thus, unlike the time when *Charmer* was decided (when Rule 32 did not even require disclosure of the PSR to the defendant), now protecting confidentiality is built into Rule 32, and hence the systemic interest in avoiding disclosure to protect confidences is diminished if not non-existent.

Mr. Cacace is facing the death penalty. His very life depends on the credibility of the government's cooperators, and by definition, he has a "compelling need" for any and all *Brady/Giglio* material and any other documents in the government's possession that are material to preparing his defense. Demanding a showing of some kind of extra "compelling need" here thus places too high a burden on the defense. Not only is there no corresponding benefit in terms of insuring the integrity of the judicial process, but also, to the contrary, keeping the PSRs entirely away from the defense has costs in terms of the essential fairness of the judicial process and the reliability of the critical truth-seeking function of the upcoming death penalty trial. Cf. *United States v. Vitta*, 653 F. Supp. 320, 330 (EDNY 1986) ("Without deciding whether the high standard of `compelling need"' is to be imposed on presentence reports containing *Brady* materials, the court finds that that test is met in the instant case. Disclosure of the witness' presentence report to the defendants and the government is required by constitutional considerations.") See also, *United States v. Harris*, 617 F.Supp.2d 99 (EDNY 2007), and *United States v. Watkins*, 623 F.Supp.2d 514 (SDNY 2009) – two cases where, in deciding to release the PSR to a third party, the courts took into account the nature of the proceeding where the PSR was to be used and the small likelihood that the PSR contained hearsay, irrelevant or inaccurate information in making the determination that the "ends of justice" called for disclosure.

Even *Charmer* recognized that the decision whether to release a presentence report to a third person is "a matter committed to the district court's discretion", and the court "has a fair measure of discretion in weighing the competing interests in order to determine whether or not the person seeking disclosure has shown that the ends of justice require disclosure." 711 F.2d at 1177. Discretion should be exercised in favor of disclosure here.

Indeed, other Courts teach that, where the third party is a defendant in a criminal case and the subject of the PSR is a cooperating witness who will testify against the defendant, the PSRs (or at least portions thereof) should be disclosed – not withheld – whenever they contain materials that bear on the credibility of such significant witnesses. See, e.g., *United States v. Strifler*, 851 F.2d 1197, 1201-02 (9th Cir. 1988) ("A defendant is entitled to material in a probation file that bears on the credibility of a significant witness in the case"; trial court is not in the same position as a prosecutor and "must release what it finds, relevant, material and probative as to the witnesses credibility"; district court erred in not releasing portions of witness's PSR relating to his criminal record and his and his wife's motives for testifying against the defendant); *United States v. Alvarez,* 358 F.3d 1194, 1208 (9th Cir. 2004) ("While a criminal defendant has no constitutional right to examine presentence reports, he is nevertheless entitled to disclosure of *Brady* material contained therein"); *United States v. Figurski,* 545 F.2d 389, 391 (4th Cir. 1974) ("a proper concern for the rights of criminal defendants and for the integrity of the judicial process requires that, in some cases, the confidentiality of a presentence report on a witness should be breached and the report, or the pertinent portions thereof, made available to counsel for the defendant upon his request." Appropriate test is whether report or pertinent

4

portions thereof contains *Brady/Giglio* material.); *United States v. Cyphers*, 553 F.2d 1064, 1069 (7th Cir. 1977) ("When Cyphers first requested the federal presentence report, the trial judge stated that he would attempt to obtain a copy of the report from the district judge for whom it was prepared. The trial judge indicated that he would make the report available to both sides if, after an in camera review, he believed it contained material helpful to the defense.")  See also, *Vitta,* 653 F. Supp. at 329 ("Failure to disclose under *Brady* will result in reversal `if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome.' *Bagley*, 105 S. Ct. at 3384. This reasonable probability limitation, formulated within the context of a post-conviction attack on the validity of a conviction, is not applicable to a pretrial proceeding where the rest of the prosecution's evidence is unknown. At the trial and pretrial stages the court and prosecutor must treat as *Brady* material any relevant evidence -- i.e., evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Doubt as to both evidence-in-chief and evidence on credibility must be resolved in favor of revelation before trial.")

Finally, to the extent that the Government can identify any actual (as opposed to purely abstract and theoretical) interests in maintaining secrecy and/or insuring reliability of the report before it is released, any disclosure of the PSRs could be tailored to meet these concerns. In *Vitta,* for example, Judge Weinstein allowed the cooperator the opportunity to challenge any unreliable statements in the PSR before disclosing it to the counsel for the defendants, and then, when he released the PSR, he did so subject to the limitation that its contents not be revealed to any other person without permission of the court and redacted it to eliminate references which might lead to members of the witness's family.  653 F.Supp. at 330-1.

For all of these reasons, we urge reconsideration of the Court's February 10 and 15th orders, and timely disclosure of the PSRs of any cooperating witnesses the government plans to call as witnesses at trial.

                                                     Respectfully submitted,

                                                     *Susan G. Kellman*

                                                   Susan G. Kellman
                                                   David M. Stern
                                                   Jane Simkin Smith
                                                   Attorneys for Joel Cacace

cc:      All counsel