*Law Offices of*
*Susan G. Kellman*
*25 Eighth Avenue*
*Brooklyn, New York 11217*

*Telephone: (718) 782-8200*                                    *Fellow, American College*
*Telefax: (718) 783-8226*                                      *Of Trial Lawyers*

e-mail: kellmanesq@aol.com

March 20, 2012

**VIA ECF**
Hon. Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

                                       Re:    U.S. v. Thomas Gieoli *et al*
                                                  08 Cr. 240 (BMC)

Dear Judge Cogan:

      This letter is prompted by two motions *in limine* recently filed by the government in connection with the trial of Mr. Cacace's co-defendants – one concerning the missing transcript of cooperating witness Joseph Competiello's guilty plea (ecf document # 1409), and the other seeking to preclude cross-examination of cooperating witnesses (including Salvatore Vatale who is currently on the stand) regarding the sentences received by cooperating witnesses (ecf document 1415).

      We are mindful that Mr. Cacace is not on trial, and that the Court has indicated that its rulings in the co-defendants' trial do not bind it with respect to Mr. Cacace (see, Order dated March 3, 2010, n. 2, denying production of PSRs of cooperating witnesses that will testify against Gioeli and Saracino but reserving decision on motion for reconsideration with regard to Cacace). We also do not want to bombard the Court with motion papers relating to Mr. Cacace while the Court is busy with the trial of the co-defendants. However, we are concerned that, in the heat of the current trial, neither defendant may have the resources to fully develop important legal issues, that the Court may be forced to rule without the benefit of careful submissions from the parties, and that, down the road, rulings in the co-defendants' case may be used by the government against Mr. Cacace. Given the pressing nature of the Vitale cross-examination issue, we are writing now, and plan to address the Competiello missing transcript issue in due course.

      The only authority offered by the government in support of its motion to preclude the introduction of evidence of the sentences received by cooperators is an unpublished ruling by Judge Garaufis in the *Basciano* case. The government fails to mention the considerable contrary legal authority recognizing that a defendant's right under the Confrontation Clause to explore bias (as explained in *Delaware v. Van Arsdall*, 475 U.S. 673 (1986), and *Davis v. Alaska*, 415 U.S. 308 (1974)), may be violated if the defendant is precluded from asking cooperating

witnesses about the specific sentence they received, and/or the sentencing range or specific sentences they avoided or hoped to avoid by testifying, and holding that a district court abused its discretion by limiting a defendant's ability to cross-examine cooperating witnesses about these matters. See, *United States v. Larson*, 495 F.3d 1094, 1106-07 (9th Cir. 2007) (en banc) (district court erred when it prohibited cross-examination of cooperating witness regarding potential mandatory life sentence; information was necessary for jury to evaluate witness's credibility and defendant's Confrontation Clause interests not outweighed by risks of jury confusion or jury nullification); *United States v. Chandler*, 326 F.3d 210 (3d Cir. 2003) (trial court committed reversible error when it limited cross-examination regarding cooperating witnesses' belief as to magnitude of sentence reductions they believed they earned; limitation violated defendant's Confrontation Clause rights, which outweighed government's interest in preventing jury from inferring defendant's potential sentence on same charge); *United States v. Cooks*, 52 F.3d 101, 103-04 (5th Cir. 1995) (district court erred when it precluded defendant from exploring effect of cooperating witness's potentially serious sentence on his motivation for testifying); *United States v. Landerman*, 109 F.3d 1053, 1063 (5th Cir. 1997) (same).

By filing its motion *in limine* after trial began, and relying solely on Judge Garaufis's unpublished ruling in *Basciano*, the government not only sandbagged the defense (who opened without reason to believe that Vitale's sentence would be off-limits), but also impeded this Court's ability to rule intelligently. Its approach stands in stark contrast to the approach taken by the prosecutors in the Northern District of Ohio in *United States v. Dimora,* 2012 U.S. Dist. LEXIS 829 (January 4, 2012). In that case, the prosecutors moved pre-trial to prohibit the defendants from eliciting testimony regarding the witnesses' sentence or potential sentences, and thus gave the court the opportunity to thoroughly and thoughtfully analyze the law before reaching a decision.

The *Dimora* court explained the issue as implicating the Sixth Amendment because defendants have a right to explore bias on cross-examination. Though pointing to an apparent circuit split on the issue of whether the confrontation clause is necessarily violated if a defendant is precluded from asking those witnesses about details of their sentences and plea agreements (including the witness's subjective beliefs as to the specific sentences avoided or hoped to be avoided), the court ultimately denied the government's motion and permitted cross-examination:

> Recognizing that defendants have a right guaranteed by the Confrontation Clause to explore bias on cross-examination, the Court will permit defendants to inquire into bias and a cooperating witness's motivation to testify. *Defendants' inquiry may include whether the witness has entered into a plea agreement with the government; whether the witness has been sentenced or is awaiting sentencing; what the sentence the witness has received (or expects to receive on the charged counts); whether the witness has received or expects to receive certain benefits in exchange for his testimony, including the withdrawal of additional charges or consideration for a sentence reduction.* The Court believes that this evidence, coupled with the Court's instruction to the jury to consider a cooperating witness's testimony with caution, is sufficient to protect the defendants' right to inquire as to a cooperating witness's bias or motives. To permit much beyond this would result in the need to elicit testimony regarding the

>intricacies of the sentencing guidelines and, in turn, risk confusing the jury. Anything more would also risk putting before the jury inappropriate information regarding a defendant's potential sentence in this case. (Emphasis added.)

Concerned that the jury might be confused by unnecessary inquiry into the intricacies of the sentencing guidelines, but, at the same time, appreciating that additional lines of inquiry might be necessary to the jury's "discriminating appraisal" of the witness's motives and bias, the court ruled that inquiry beyond the parameters it set would be allowed if a party gave the court advance notice and demonstrated that its need for the evidence outweighed the risk of unfair prejudice.

Notably, in setting forth the apparent conflict in the circuits, the *Dimora* court pointed only to a summary order in the Second Circuit, *United States v. Reid*, 300 Fed. App'x 50, 52 (2d Cir. 2008); *Reid* did not discuss the Confrontation Clause. *Reid* thus contrasts with *United States v. Rosa*, 11 F.3d 315, 335-6 (2d Cir. 1993), where the Circuit did evaluate a defendant's challenge to limitations on cross-examination on Sixth Amendment grounds. Importantly, in rejecting the claim that the trial court erred when it barred the questioning of cooperating witnesses as to the effect the sentencing guidelines would have on their sentences, the Court noted a distinction between asking about the guidelines and asking about the sentences the witnesses hoped to receive, "*The court permitted cross-examination of those witnesses as to their plea agreements, the statutory maximum sentences they faced, and the benefits they hoped to gain from cooperation.* The court was well within its discretion in ruling that the vagaries of Guidelines calculations were not a proper subject for cross-examination." Id at 366 (emphasis added).

Moreover, the Court in *Rosa* articulated the standard for determining whether cross-examination is improperly curtailed: "Cross-examination is not improperly curtailed if the jury is in possession of facts sufficient to make a 'discriminating appraisal' of the particular witness's credibility." Id. (citations omitted). This language – drawn from the Supreme Court's decision in *Van Arsdall* -- is precisely the language relied upon by the Third Circuit in *Chandler*, when it ruled that the defendants' Sixth Amendment rights were violated when they were precluded from cross-examining cooperators "with respect to the *magnitude* of the sentence reduction they believed they had earned or would earn through their testimony." 326 F.3d at 221 (emphasis in original).

The government argues that the sentence Vitale received is not a "benefit" bestowed by the government, but, rather a "judicial determination" and suggests, therefore, that it is somehow not relevant to an assessment of his (or any other cooperating witness's) bias. This simplistic argument ignores the significant role the government played in "encouraging" the sentencing court to impose such a sentence,[i] the ongoing obligations of Vitale under any term of supervised release, and the likely perception that Vitale has of a need to continue to please the government in order to enjoy the fruits of the sentence he received and not be held in violation of those conditions. All of these areas are ripe for exploration on cross-examination and to limit such an examination would significantly interfere with the defendants' legitimate rights under the Confrontation Clause.

3

The government's presentation of this most serious issue -- in a motion filed after trial began and supported only by an unpublished ruling in another case – is troubling. It appears to have been designed to shield the Court from a full view of the law that has dominated this area for decades in an attempt to ambush the trial defendants and deny them due process and their right to confront the witnesses who testify against them. Lawyers – including prosecutors – have an ethical obligation to disclose to a tribunal pertinent legal authority that is adverse to their position. See, *United States v. Gaines*, 295 F.3d 293, 302 (2d Cir. 2002) (Court refers counsel to New York's Code of Professional Responsibility EC 7-23 (McKinney Supp. 2001-2001) for failure to cite or distinguish controlling precedent). The Justice Department obtained the adverse ruling in *Dimora* only a few weeks ago. It should have been called to the court's attention.

Accordingly, we urge the Court to permit a fullbodied cross-examination of the government's cooperating witnesses on the issue of sentences that have previously been imposed.

Respectfully submitted,

*Susan G. Kellman*

Susan G. Kellman

*Jane Simkin Smith*

Jane Simkin Smith

cc: All counsel
    Via ECF

---

i   Since Cacace has not yet received the 3500 material for this witness, we are limited in our understanding of the representations made by the government to the sentencing court regarding the nature and extent of Mr. Vitale's cooperation; however, we are confident that the accolades recited by the government in its motion pursuant to U.S.S.G. 5K1.1, would be a rich avenue for exploration as to the witness(es) expectations and understanding of the role his cooperation has retroactively and prospectively. After all, according to the N.Y. Times, October 29, 2010, Vitale admitted to killing 11 people and was sentenced to a term of time served.