Jane Simkin Smith
Attorney At Law
P.O. Box 1277
Millbrook, New York 12545
845 724 3415
Fax 888-391-5018
jssmith1@optonline.net

July 26, 2012

**By ECF**

The Honorable Brian M. Cogan
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: *United States v Joel Cacace*
      Criminal Docket No. 08-240 (S-7) (BMC)

Dear Judge Cogan:

  We write to advise the Court of a highly disturbing development in this case: The government recently revealed that it intends to call Joseph Massino as a witness at trial. This decision creates a conflict for learned counsel because, as the Court was advised *in 2009* before it appointed him, David Stern previously represented Massino.[1] The government's decision to use Massino as a witness raises a host of knotty ethical and constitutional problems, and, given the timing of the government's revelation, also raises a serious concern that the prosecutors are attempting to manufacture a conflict in order to derail the defense.

  The issues presented by this turn of events include not only Sixth Amendment right to counsel issues and Sixth Amendment speedy trial issues, but also sensitive attorney-client privilege and professional ethical issues. See, generally, *United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982); *United States v. Perez,* 325 F.3d 115 (2d Cir. 2003); *United States v. Levy*, 25 F.3d 146 (2d Cir. 1994). Resolution will require careful examination and delicate balancing by the Court, by counsel, and by Mr. Cacace. However, at this point, we have more questions than answers.

  Without more information from the government, we are not in a position to intelligently assess the extent of the conflict and the nature of counsel's ethical quandary; nor can we intelligently advise our client concerning the pitfalls of the attorney conflict. Without more information, we are also not in a position to request particular relief, propose safeguards, or move for sanctions -- though we believe that a motion to preclude Massino's testimony is likely

---

[1] See attached letters of Susan Kellman and David Stern, dated January 13, 2009 ("ecf" documents 196 and 196-2).

to be in order.  See, *United States v. Lech*, 895 F. Supp. 586, 592 (SDNY 1995 (In that case, like this one, the government failed to disclose a potential conflict, and, when it was discovered by Lech's counsel, he moved to bar the government from using the cooperating witness's testimony at trial.  Then District Court Judge Sonia Sotomayor noted the force of the argument that a defendant "should not have to waive either his right to conflict-free representation or his right to a speedy trial because of the government's careless failure to disclose information about the conflict of interest until the eve of trial," and recognized that the solution might be "to preclude the government from calling [the] witness, thereby eliminating the potential conflict of interest." The witness was a major witness in the government's case (who had been previously represented not by Lech's attorney, but, rather, by a different Federal Defender in the same office); because Judge Sotomayor reasoned that precluding the witness's testimony would harm the interests of justice, she ultimately denied the motion to preclude his testimony.  However, she placed "the United States Attorney's Office on notice that a recurrence of this sort of problem might well lead to a different result in another case."). On its face, the situation created by the government's recent disclosure here appears far more acute than the situation in *Lech*.

      In order to better understand the extent of our current dilemma, we request the Court to order the government to provide a detailed proffer regarding Massino's anticipated testimony that includes (1) details and not simply generalities about the planned testimony (2) specifics as to when the government learned of the information from Massino; (3) identification of any document prepared after July 9, 2009 (the date of a *Curcio* hearing conducted in this case upon the government's motion, see "ecf" document 355, attached), reflecting Massino's contribution to the government's case and suggesting any legitimate reason to call Massino as a witness that did not appear prior to July 9, 2009; and (4) specifics as to when the government made the determination to use Massino as a witness.  We also will be requesting a meeting with Massino so that Mr. Stern may discuss, among other things, whether Massino intends to waive any potential conflict and attorney-client privilege or whether he objects to Mr. Stern's use of any confidences or secrets in cross-examining him.  See, *United States v. Oberoi*, 331 F.3d 44 (2d Cir. 2003).  We ask the Court to direct the government to facilitate such a meeting.

      Mr. Stern has served as learned death penalty counsel for over three and a half years -- since January 20, 2009 -- and during that time he has not only devoted hundreds of hours to the defense at taxpayer expense, but also developed a strong lawyer-client relationship with Mr. Cacace and substantial work product.  Mr. Stern expressly advised the Court of his prior representation of Massino (also as learned counsel) before he was appointed in this case.  (See, "ecf" documents 196, 196-2, 199, 200, all attached).  The government had no objection to Mr. Stern's appointment at the time and, since then, has remained silent with respect to any potential conflict on Mr. Stern's part because of divided loyalty to a prior client.[2]

---

[2] Of course, the government did not need the "ecf" filings to know that Mr. Stern previously represented Massino, and that there would be a possible conflict of interest if Massino were a witness at Mr. Cacace's trial.  Massino was prosecuted by the EDNY United States Attorney's Office, and, obviously, the government knew that Mr. Stern represented Massino at that time.  Indeed, Massino was such an extraordinary catch when he surreptitiously offered to cooperate in 2004 that, working behind Mr. Stern's back, the Eastern District prosecutors arranged for

2

Astonishingly, even after it determined to use Massino as a witness, the government did not notify the Court of any potential conflict involving Mr. Stern or move to disqualify him from continuing to serve as counsel for Mr. Cacace. This is inexplicable given that the government sought *Curcio* hearings in this case on multiple occasions involving other attorneys (see, ecf documents 314, 355, 1096, 1116), even when it had *no* intention of calling a prior client of the attorney as a witness: In June 2009, it notified the Court "pursuant to its obligation under Second Circuit law" of Ms. Kellman's "potential conflict" based simply on the fact that she had represented individuals allegedly connected to the Colombo family. (See Government's Letter dated June 16, 2009 ("ecf" document 314), attached.)

The government had the same obligation to notify the Court and the defendant in Mr. Stern's case. In the best light, its failure to do so and its failure to move for a *Curcio* hearing notwithstanding its determination to use Massino at trial suggests that Massino is an inessential witness and a troubling oversight on the part of the prosecutors. On the other hand, if Massino has something substantial to offer, the prosecutors' failures suggest either gross incompetence or recklessness. The timing of the disclosure that Massino will be a witness, combined with the fact that Massino was not a witness at the recent trial of Thomas Gioeli and Dino Saracino, also raises questions whether the prosecutors made the decision to use Massino at Mr. Cacace's trial in order to manufacture a conflict and thus derail the defense. See, *Wheat v. United States,* 486 U.S. 153, 170 n.3 (Marshall, J., dissenting) ("The very insignificance of Bravo's testimony, combined with the timing of the prosecutor's decision to call Bravo as a witness, raises a serious concern that the prosecutor attempted to manufacture a conflict in this case.")

The failure to notify the Court and the defense of the attorney conflict involving Massino is also bizarre given the circumstances surrounding Mr. Stern's appointment to represent Massino in 2003. Remarkably, Mr. Stern was appointed to represent Massino after the government successfully moved to disqualify Massino's prior learned counsel, Ephraim Savitt, on the very ground that presents itself here: that Savitt had previously represented a cooperating witness whom the government intended to call at Massino's trial! See *United States v. Massino*, 303 F. Supp. 2d 258 (EDNY 2003).

Counsel for Mr. Cacace did not learn of the conflict until after the government recently turned over 3500 material, and, frankly, given the failure of the government to notify anyone of the conflict, even then counsel had no reason to contemplate that the government actually intended to call Massino as a witness. It was not until July 12, 2012, in connection with a submission we made to the United States Attorney seeking reconsideration of the decision to seek the death penalty, that Ms. Kellman received an email relating the government's intentions. (See, attached emails between Susan Kellman and AUSA Elizabeth Geddes.) We immediately began considering the implications of Massino's testifying, but were not able to file a submission sooner because both Mr. Kellman and Mr. Stern are attending a death penalty training session in California. We are notifying the Court as promptly as possible.

---

Massino to obtain separate additional counsel, and, in doing so, deliberately kept Mr. Stern in the dark as they were secretly conferring with his client and cultivating Massino's cooperation.

Our client has the constitutional right to be represented by an attorney who is free from conflicts of interest, and the constitutional right to a speedy trial. While a defendant may waive his right to conflict-free counsel even where his attorney previously represented a trial witness, *see United States v. Fulton*, 5 F.3d 605, 613 (2d Cir. 1993), Mr. Cacace cannot determine whether to do so in a vacuum, and should not be forced to sacrifice one constitutional right in order to preserve another, especially if the government does not have a pressing need for Massino's testimony. (That the government actually has a pressing need seems unimaginable in light of its failure to timely raise this conflict with the Court.) This is a death penalty case and the inquiries demanded by *Curcio* and its progeny should be undertaken with the utmost care and utmost understanding of the relevant facts.

For all these reasons, the Court should begin the process by requiring the government to make the detailed proffers requested above.

Respectfully submitted,

Jane Simkin Smith
David Stern
Susan Kellman

cc: All counsel
Via ECF